IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT OF THE
STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
CIVIL DIVISION

MRI ASSOCIATES OF ST. PETE, INC.,
d/b/a SAINT PETE MRI., as assignee,
individually, and on behalf of all those
similarly situated,

    Plaintiff,

vs.

DIRECT GENERAL INSURANCE
COMPANY,

    Defendant.

_____/

CLASS REPRESENTATION

Case No. 12 014335

Division DIVISION F

*RECEIVED SEP 11 2012 CLERK OF CIRCUIT COURT HILLSBOROUGH COUNTY, FL*

**NOTICE TO CLERK OF THE COURT –**
This case was previously filed as Case No.
12-CA-006289, Division C, and was
voluntarily dismissed without prejudice.
Case must be reassigned to Division C. *See,*
Administrative Order S-2008-145.

## CLASS ACTION COMPLAINT

Plaintiff MRI Associates of St. Pete, Inc., d/b/a Saint Pete MRI, as assignee, individually,
and on behalf of all those similarly situated, brings this action against Defendant Direct General
Insurance Company, and states:

### Jurisdiction, Parties, and Venue

1.     This is an action asserting class action claims for declaratory and injunctive relief
pursuant to Florida Rule of Civil Procedure 1.220(b)(2), and asserting individual (non-class action)
claims for damages.

2.     This Court has jurisdiction because the amount in controversy exceeds $15,000.00,
exclusive of interest, costs, and attorneys' fees.

3.     At this time, the Plaintiff does not have reason to believe that the amount in
controversy exceeds $5,000,000.00.

4.     The Plaintiff is, and at all material times has been, a Florida corporation and a
health care provider duly licensed and authorized by the State of Florida to provide magnetic

resonance imaging ("**MRI**") and other health care services to patients, including persons who have sustained personal injuries in motor vehicle collisions and who have assigned to the Plaintiff their personal injury protection ("**PIP**") benefits under automobile insurance policies.

5.     Defendant is a corporation doing business under the laws of the State of Florida, and at all material times, sold automobile insurance, including PIP coverage subject to Sections 627.730 through 627.7405, Florida Statutes ("**Florida's Motor Vehicle No-Fault Law**" or the "**PIP Statutes**").

6.     Venue is proper in Hillsborough County, Florida because the Defendant has offices for transaction of their customary business in Hillsborough County, Florida, and/or and one or more of the cause of action set forth below arose and/or accrued in Hillsborough County, Florida.

7.     All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

### Background Information Concerning Tilishia Rhymes

8.     On or about October 22, 2008, Tilishia Rhymes ("**Rhymes**") was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

9.     At that time, Rhymes was a contracting party and/or a named insured and/or an omnibus insured under an automobile insurance policy issued by Defendant, and that policy was in full force and effect, and provided PIP coverage as required by law to comply with Florida's Motor Vehicle No-Fault Law. A copy of the insurance policy is not attached hereto, because the Plaintiff does not have a copy of it. Defendant, however, is in possession of the policy.

10.     As a result of the injuries sustained by Rhymes, the Plaintiff rendered diagnostic services to Rhymes on or about December 12, 2008.

11.    Prior to providing such diagnostic services and as a condition to providing them, the Plaintiff obtained from Rhymes a written assignment of benefits, a copy of which is attached hereto as "**Exhibit A.**"

## Background Information Concerning James Clark

12.    On or about December 27, 2009, James Clark ("**Clark**") was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

13.    At that time, Clark was a contracting party and/or a named insured and/or an omnibus insured under an automobile insurance policy issued by Defendant, and that policy was in full force and effect, and provided PIP coverage as required by law to comply with Florida's Motor Vehicle No-Fault Law.  A copy of the insurance policy is not attached hereto, because the Plaintiff does not have a copy of it. Defendant, however, is in possession of the policy.

14.    As a result of the injuries sustained by Clark, the Plaintiff rendered diagnostic services to Clark on or about May 10, 2010.

15.    Prior to providing such diagnostic services and as a condition to providing them, the Plaintiff obtained from Clark a written assignment of benefits, a copy of which is attached hereto as "**Exhibit B.**"

## Background Information Concerning Ashleigh Paskert

16.    On or about April 1, 2011, Ashleigh Paskert ("**Paskert**") was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

17.    At that time, Paskert was a contracting party and/or a named insured and/or an omnibus insured under an automobile insurance policy issued by Defendant, and that policy was in full force and effect, and provided PIP coverage as required by law to comply with Florida's Motor

Vehicle No-Fault Law.  A copy of the insurance policy is not attached hereto, because the Plaintiff does not have a copy of it. Defendant, however, is in possession of the policy.

18.     As a result of the injuries sustained by Paskert, the Plaintiff rendered diagnostic services to Paskert on or about May 10, 2011.

19.     Prior to providing such diagnostic services and as a condition to providing them, the Plaintiff obtained from Paskert a written assignment of benefits, a copy of which is attached hereto as "Exhibit C."

### Background Information Concerning Erin Thatcher and Others

20.     On or about May 18, 2011, Erin Thatcher ("**Thatcher**") was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

21.     At that time, Thatcher was a contracting party and/or a named insured and/or an omnibus insured under an automobile insurance policy issued by Defendant, and that policy was in full force and effect, and provided PIP coverage as required by law to comply with Florida's Motor Vehicle No-Fault Law.  A copy of the insurance policy is not attached hereto, because the Plaintiff does not have a copy of it. Defendant, however, is in possession of the policy.

22.     As a result of the injuries sustained by Thatcher, the Plaintiff rendered diagnostic services to Thatcher on or about June 10, 2011.

23.     Prior to providing such diagnostic services and as a condition to providing them, the Plaintiff obtained from Thatcher a written assignment of benefits, a copy of which is attached hereto as "Exhibit D."

24.     The Plaintiff has provided similar diagnostic services to other PIP insureds of Defendant, pursuant to similar written assignments of benefits, and the Plaintiff reasonably anticipates that it will continue to do so in the future.

## Background Information – Florida Motor Vehicle No-Fault Law

25.    In 1971, the Florida Legislature enacted the "Florida Motor Vehicle No-Fault Law"
in Sections 627.730 through 627.7405, Florida Statutes. *See*, Ch. 71-252, Laws of Fla. (1971).
Since then, Florida has operated under what is commonly known as a "no-fault" system for
automobile liability.

26.    Effective on October 1, 2007, the Florida Motor Vehicle No-Fault Law was
automatically repealed by a "sunset" provision. *See*, Ch. 2003-411, §19, Laws of Fla. (2003).

27.    Thereafter, effective as of January 1, 2008, the Legislature re-enacted a new set of
statutes as the Florida Motor Vehicle No-Fault Law. *See*, Ch. 2007-324, §8, Laws of Fla. (2007);
*Geico Indemnity Co. v. Physicians Group, LLC*, 47 So.3d 354, 356 (Fla.2d DCA 2010) ("On
January 1, 2008, the <u>new</u> Florida Motor Vehicle No-Fault Law, including a <u>new</u> PIP statute, went
into effect") (emph. added).

28.    In pertinent part, the new version of Section 627.736 that became effective as of
January 1, 2008, now identifies <u>two</u> alternative payment calculation methods for medical benefit
claims, and states:

627.736  Required personal injury protection benefits; exclusions; priority; claims.—

    (1)  **REQUIRED** BENEFITS.—Every insurance policy complying with the
security requirements of s. 627.733 **shall** **provide** **personal injury protection** to
the named insured, relatives residing in the same household, persons operating the
insured motor vehicle, passengers in such motor vehicle, and other persons struck
by such motor vehicle and suffering bodily injury while not an occupant of a self-
propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(e),
to a limit of $10,000 for loss sustained by any such person as a result of bodily
injury, sickness, disease, or death arising out of the ownership, maintenance, or use
of a motor vehicle **as follows:**

    (a)  Medical benefits.—**Eighty percent of all reasonable expenses** for
medically necessary medical, surgical, X-ray, dental, and rehabilitative services,
including prosthetic devices, and medically necessary ambulance, hospital, and
nursing services. However, the medical benefits **shall** **provide reimbursement**
only for such services and care that are lawfully provided, supervised, ordered, or

prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided by any of the ... persons or entities [listed in subparts 1 through 5]....

. . . . .

(5) CHARGES FOR TREATMENT OF INJURED PERSONS.—

(a)1. Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party **only a reasonable amount** pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment, if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. In no event, however, may such a charge be in excess of the amount the person or institution customarily charges for like services or supplies. With respect to a determination of whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:

a. For emergency transport and treatment by providers licensed under chapter 401, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002(9) provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

3. **For purposes of subparagraph 2.**, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that **it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007** for medical services, supplies, and care subject to Medicare Part B.

4. Subparagraph 2. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 2. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes.

5. **If an insurer limits payment as authorized by subparagraph 2., the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits**, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits.

(Emph. added). Thus, the Plaintiff contends under the new version of Section 627.736 that became effective as of January 1, 2008, the Legislature gave PIP insurers the alternative option of paying medical benefit claims under either: (a) the pre-existing method described in Section 627.736(1)(a) and (5)(a)1 (the **"Reasonable Amount Method"**), or (b) a new method of paying 80% of the fee schedule described in Section 627.736(5)(a)2-5 (the **"Fee Schedule Method"**).

29.     An insurance company's choice between the two alternative payment calculation methods has significant implications to Florida health care providers under the new PIP statute. For example, if the PIP insurance company uses the Fee Schedule Method, instead of the

Reasonable Amount Method, the health care provider is expressly prohibited by Section 627.736(5)(a)5 from charging the insured patient for the remaining balance charged, except for co-insurance amounts or when PIP benefits are exhausted. That restriction does not apply under the Reasonable Amount Method.

30.     Because the version of Section 627.736 in effect since January 1, 2008 now gives insurers two alternative options for calculating the amounts they must pay for PIP claims, the PIP insurer must clearly and unambiguously select one (and only one) of the two payment calculation methodologies within the PIP insurance policy itself. If not, neither the PIP insured nor his/her health care provider(s) are in any position to know the extent of health care services that are covered by the PIP insurance policy or the maximum amount that the health care provider(s) can recover for rendering health care services to the PIP insured.

31.     Thus, the PIP insurer's election as to how it will pay claims for medical benefits affects both the value of the PIP insurance policy, also affects the type and amount of medical services that the PIP insured can receive from his/her health care provider(s) pursuant to that PIP insurance policy, and also affects health care providers' billing practices for services rendered to PIP insureds.

**Defendant's PIP Policy Language from January 1, 2008 through May 30, 2010**

32.     The Plaintiff does not have copies of the actual PIP insurance policies issued by the Defendant to Rhymes, Clark, Paskert and Thatcher. However, attached hereto as **"Exhibit E"** is an exemplar PIP insurance policy, which Plaintiff believes has been generally used by the Defendant for its PIP insureds in the State of Florida on or after January 1, 2008 through on or about May 30, 2010.

33.     Upon information and belief, the Defendant's PIP insurance policies issued to their PIP insureds in the State of Florida and in effect during the time period of on or after January 1,

2008 through on or about May 30, 2010, include the following provision which describes the Insurance Company's methodology for paying medical benefit claims:

> **Subject to the limits shown on the Declarations Page, personal injury protection benefits consist of:**
>
> **(1) 80% of all reasonable and necessary medical expenses;**

In addition, the policies defined "medical expenses" as follows:

> **(2) "Medical Expenses" means reasonable expenses incurred for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services and such other products, services and accommodations as described in Section 627.736(1)(A) of the Florida Statutes.**

*See*, Exhibit E, at pages 9-10.

34.     Thus, according to the Defendant's own PIP insurance policies issued from January 1, 2008 through May 30, 2010, the Defendant elected to pay PIP claims for MRI services according to the mandatory methodology described in Section 627.736(1)a and (5)(a)1, Florida Statutes (2007-2011) and not the alternate permissive methodology described in Section 627.736(5)(a)2a through f, Florida Statutes (2007-2011).

### Defendant's Amendatory Endorsement Language Since May 31, 2010

35.     Attached hereto as **"Exhibit F"** is a copy of Defendant's "Amendatory Endorsement" (Form FL028A (04-10)), which was issued on or about May 31, 2010, and which Plaintiff believes is relied upon by the Defendant for PIP claims after that date.

36.    Under said Amendatory Endorsement, insured patients were entitled to PIP insurance coverage for "80% of all reasonable and necessary medical expenses," and "medical expenses" are defined as follows:

> **"Medical Expenses"** means reasonable expenses incurred for necessary medical; surgical; x-ray; dental; ambulance; hospital; professional nursing services; rehabilitative services, including prosthetic devices; and such other products; services; and accommodations as described in the **No Fault Law**.

*See*, Exhibit F at page 1. However, said Amendatory Endorsement later states:

> In determining whether charges for **medical expenses** under this Part are reasonable, **we** may reduce payments for amounts that are billed to any lesser amount that results from the application of any schedule of charges or alternative reimbursement method that is expressly referenced or authorized for use by insurers under the **No Fault Law**. Any reductions **we** make will not affect the rights of an **insured** for coverage under this Part.

*See*, Exhibit F at page 3.

37.    Thus, according to said Amendatory Endorsement, since May 31, 2010, the Defendant has elected to pay PIP claims for medical benefits according to the Reasonable Amount Methodology described in Section 627.736(1)a and (5)(a)1, but at the same time, the Defendant vaguely suggests that it "may" (at its whim and without identifying any reasons or standards) pay less than the reasonable amount by applying the Fee Schedule Method or any other "alternative reimbursement method" authorized by the PIP statute.

**Background Information Concerning the Defendant's**
**Improper Methodology for Paying PIP Claims**
**During January 1, 2008 through May 30, 2010**

38.     Pursuant to the above-referenced assignments of benefits, the Plaintiff submitted reasonable bills to the Defendant for services rendered to Rhymes and Clark during the time period of January 1, 2008 through May 30, 2010.

39.     A copy of the bills submitted by the Plaintiff to Defendant concerning the services provided to Rhymes and Clark are attached hereto as **"Exhibit G"** and **"Exhibit H"** respectively. These bills are a representative example of similar bills concerning services provided to Defendant's other PIP insureds by the Plaintiff since January 1, 2008 through May 30, 2010.

40.     During the time period of January 1, 2008 through May 30, 2010, after receiving the Plaintiff's attached bills and similar bills for medical services provided to the Defendant's PIP insureds, the Defendant failed and/or refused to pay medical benefits at the rate of 80% of the reasonable amount, which the Plaintiff was entitled to receive pursuant to Section 627.736(1)a and (5)(a)1, Florida Statutes (2007-2011) and/or the express terms of the Defendant's PIP insurance policies.

41.     Upon information and belief, the Defendant's routine practice during the time period of January 1, 2008 through May 30, 2010 was to unlawfully reduce the required amount due and payable to MRI providers under the Reasonable Amount Method of Section 627.736(1)a and (5)(a)1, and/or the express terms of the PIP insurance policy, by instead applying the Fee Schedule Method in Section 627.736(5)(a)2f.

42.     As a result, during the time period of January 1, 2008 through May 30, 2010, the Defendant routinely miscalculated and underpaid the Plaintiff and other similarly situated MRI providers, who lawfully billed at the levels which exceeded the rates described under the Fee Schedule Method in Section 627.736(5)(a)2f.

## Background Information Concerning the Defendant's Improper Methodology for Paying PIP Claims Since May 31, 2010

43.     Pursuant to the above-referenced assignments of benefits, the Plaintiff submitted reasonable bills to the Defendant for services rendered to Paskert and Thatcher after May 31, 2010.

44.     A copy of the bills submitted by the Plaintiff to Defendant concerning the services provided to Paskert and Thatcher are attached hereto as **"Exhibit I"** and **"Exhibit J"** respectively. These bills are representative examples of similar bills concerning services provided to Defendant's other PIP insureds by the Plaintiff since May 31, 2010.

45.     After receiving the Plaintiff's attached bills and similar bills for medical services provided to the Defendant's PIP insureds after the Amendatory Endorsement's effective date of May 31, 2010, the Defendant failed and/or refused to pay medical benefits at the rate of 80% of the reasonable amount, which the Plaintiff was entitled to receive pursuant to the Reasonable Amount Method of Section 627.736(1)a and (5)(a)1, and/or the express terms of the Defendant's PIP insurance policies.

46.     Upon information and belief, the Defendant's routine practice under its Amendatory Endorsement since May 31, 2010 is to rely on the Fee Schedule Method in Section 627.736(5)(a)2f, to unlawfully reduce the required amount due and payable to MRI providers under the Reasonable Amount Method of Section 627.736(1)a and (5)(a)1 and/or the express terms of the PIP insurance policies.

47.     As a result, since May 31, 2010, the Defendant routinely miscalculates and underpays the Plaintiff and other similarly situated MRI providers, who are lawfully billing at the levels which exceed the rates calculated under the Fee Schedule Method in Section 627.736(5)(a)2f.

**Class Action Allegations**

48.     Pursuant to Florida Rule of Civil Procedure 1.220(b)(2), the Plaintiff, together with such other individuals that may join this action as class representatives, hereby brings Counts I, II, IV and V of this action on its own behalf and on behalf of all those similarly situated MRI providers who were underpaid by the Defendant based, in whole or in part, on its unlawful interpretation and/or application of Section 627.736(1)(a) and (5)(a)1-5, Florida Statutes (2007-2011) and/or the express terms of the Defendant's PIP insurance policies.

49.     As used in Count I, the **"Pre-Endorsement Class"** consists of and is defined as all MRI providers (a) who provided medical services to any PIP insured of the Defendant whose insurance policy was in effect on or after January 1, 2008 through May 30, 2010; (b) who own an assignment of benefits from said PIP insured; (c) who submitted bills to the Defendant for payment of such medical services; (d) where the amounts charged exceeded the rates calculated under the Fee Schedule Method in Section 627.736(5)(a)2f, Florida Statutes (2007-2011); and (e) received payment from the Defendant based on the Fee Schedule Method of 627.736(5)(a)2.a through f, Florida Statutes (2007-2011) (hereafter the **"Class"**).

50.     As used in Count I, the **"Pre-Suit Notice Pre-Endorsement Sub-Class"** consists of and is defined as all persons and/or entities who: (a) are a member of the Pre-Endorsement Class, and (b) submitted a pre-suit notice to the Defendant pursuant to Section 627.736(10), Florida Statutes (2007-2011).

51.     As used in Count I, all references to the "Pre-Endorsement Class" shall include the "Pre-Suit Notice Sub-Class," unless otherwise stated.

52.     As used in Counts III and IV, the **"Post-Endorsement Class"** consists of and is defined as all MRI providers (a) who provided medical services to any PIP insured of the Defendant whose insurance policy was subject to the Amendatory Endorsement issued on or about

May 31, 2010; (b) who own an assignment of benefits from said PIP insured; (c) who submitted bills to the Defendant for payment of such medical services; (d) where the amounts charged exceeded the rates calculated under the Fee Schedule Method in Section 627.736(5)(a)2f, Florida Statutes (2007-2011); and (e) received payment from the Defendant based on the Fee Schedule Method of 627.736(5)(a)2.a through f, Florida Statutes (2007-2011) (hereafter the "Post-Endorsement Class").

53.    As used in Counts III and IV, the **"Pre-Suit Notice Post-Endorsement Sub-Class"** consists of and is defined as all persons and/or entities who: (a) are a member of the Pre-Endorsement Class, and (b) submitted a pre-suit notice to the Defendant pursuant to Section 627.736(10), Florida Statutes (2007-2011).

54.    As used in Counts III and IV, all references to the "Post-Endorsement Class" shall include the "Pre-Suit Notice Post-Endorsement Sub-Class," unless otherwise stated.

55.    The Plaintiff reserves the right to amend the class and sub-class definitions as discovery proceeds and to conform to the evidence.

56.    While the exact number of class members is unknown at this time, the Plaintiff submits that there are hundreds of MRI providers operating in the State of Florida, who are potential class members in this action, each of whom may have multiple claims.

57.    The number of class members are so numerous that separate joinder of each member is impractical.

58.    This action poses questions of law and fact that are common to and affect the rights of all members of the class. Such questions of law and fact common to the class include but are not limited to the following:

(a)    On or after January 1, 2008, has the Defendant been paying its PIP insureds' claims for MRI services pursuant to the Fee Schedule Method in Section 627.736(5)(a)2f,

Florida Statutes (2007-2011), instead of the Reasonable Amount Method of Section 627.736(1)(a) and (5)(a)1, Florida Statutes (2007-2011)?

(b)     Is the Defendant required to pay PIP claims for MRI services in accordance with the Reasonable Amount Method required by Section 627.736(1)(a) and (5)(a)1, without clearly and unambiguously adopting another payment calculation method in its PIP insurance policy?

(c)     Is the Defendant lawfully authorized to process and pay PIP claims for MRI services under the Fee Schedule Method in Section 627.736(5)(a)2f, without specifically adopting that payment calculation method in its PIP insurance policy to the exclusion of any other payment calculation methods?

(d)     What are the parties' respective rights and obligations concerning Section 627.736(1)(a) and (5)(a)1-5 and/or the "Medical Expenses" provision of the Defendant's PIP insurance policy and/or the Amendatory Endorsement?

(e)     When the Defendant pays for PIP claims for MRI services using the Fee Schedule Method in a manner that is contrary to the "Medical Expenses" provision of its PIP insurance policy and/or the Amendatory Endorsement, is the MRI provider prohibited under Section 627.736(5)(a)5 from billing or attempting to collect from the insured patient any amount in excess of the Defendant's payment?

59.     Based on the facts and circumstances set forth herein, the Plaintiff's claims are typical of the claims of the members of the class.

60.     Further, other individual plaintiffs may elect to join this action upon such grounds as the Court may set forth and these individuals will likewise have issues that are common to those of all other class members.

61.     The Plaintiff has retained the undersigned attorneys who are experienced in

handling similar class actions over the last five (5) years. As a result, the undersigned attorneys are qualified and experienced in class action litigation and will adequately protect the interests of the class.

62.     With respect to Counts I, III, and IV below, the Plaintiff brings this class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) on the grounds that the Defendant's actions or omissions as alleged herein, are generally applicable to all class members thereby making declaratory relief concerning the class as a whole appropriate.

### Count I – Class Action for Declaratory Relief (by Pre-Endorsement Class)

63.     This is a class action for declaratory relief pursuant to Chapter 86, Florida Statutes, brought by the Plaintiff and the Pre-Endorsement Class against the Defendant.  Alternatively, this count is brought by the Plaintiff and the Pre-Suit Notice Pre-Endorsement Sub-Class against the Defendant.

64.     The Plaintiff realleges and incorporates by reference paragraphs 1-15, 25-34, 38-42, 48-51, and 55-62 above.

65.     In pertinent part, Section 627.736(10), Florida Statutes (2007-2011) states the following:

DEMAND LETTER.—

(a) As a condition precedent to filing **any action for benefits under this section**, the insurer must be provided with written notice of an intent to initiate litigation. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(Emph. added).  Because Count I only seeks declaratory relief under Chapter 86, it is not an "action for benefits" pursuant to Section 627.736, and a pre-suit demand letter is not a condition precedent to the initiation of this action.

66.     Alternatively, the Plaintiff and the Pre-Suit Notice Pre-Endorsement Sub-Class satisfied the pre-suit notice requirements of Section 627.736(10), Florida Statutes (2007-2011), for

the following reasons:

      (a)     With respect to the services provided to Rhymes, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated October 5, 2009, a copy of which is attached hereto as "**Exhibit K.**"

      (b)     With respect to the services provided to Clark, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated September 21, 2010, a copy of which is attached hereto as "**Exhibit L.**"

      (c)     Pursuant to the definition set forth in paragraph 50 above, each member of the Pre-Suit Notice Pre-Endorsement Sub-Class is required to have submitted a pre-suit demand letter to the Defendant pursuant to Section 627.736(10), Florida Statutes (2007-2011).

67.    The Plaintiff takes the position that under the Defendant's original insurance policy language, the Defendant is not authorized to pay PIP claims for MRI services using the Fee Schedule Method in Section 627.736(5)(a)f, and must instead use the Reasonable Amount Method required by Section 627.736(1)(a) and (5)(a)1. The Defendant disagrees with this position.

68.    The Plaintiff takes the position that the Defendant is not lawfully authorized to process PIP claims for MRI services under the Fee Schedule Method, without clearly and unambiguously adopting that method in its PIP insurance policy, in lieu of the Reasonable Amount Method. The Defendant disagrees with this position.

69.    By failing to clearly and unambiguously adopt a single and exclusive payment calculation methodology in its PIP insurance policies issued during the time period of January 1, 2008 through May 30, 2010, the Defendant places the Plaintiff, the Defendant's PIP insureds, and their MRI providers in doubt concerning the exact amount owed for MRI services rendered. The Defendant should not be permitted to refuse to calculate the amount of payment due under the

Reasonable Amount Method, without clearly and unambiguously adopting the Fee Schedule Method in its insurance policy to the exclusion of any other payment calculation methodology.

70.    The Plaintiff is in doubt concerning its rights, and a bona fide present controversy exists between the Plaintiff, the class members, and the Defendant concerning the proper interpretation of Section 627.736, Florida Statutes (2007-2011) and other applicable law, and the express terms of the Defendant's PIP insurance policies issued during the time period of January 1, 2008 through May 30, 2010, and the parties' respective rights and obligations thereunder, with respect to issues which include but are not limited to the following:

(a)    Is the Defendant required to pay PIP claims for MRI services in accordance with the Reasonable Amount Method required by Section 627.736(1)(a) and (5)(a)1, without clearly and unambiguously adopting another payment calculation method in its PIP insurance policy?

(b)    Is the Defendant lawfully authorized to process and pay PIP claims for MRI services under the Fee Schedule Method in Section 627.736(5)(a)f, without specifically adopting that payment calculation method in its PIP insurance policy to the exclusion of any other payment calculation methods?

(c)    What are the parties' respective rights and obligations concerning Section 627.736(1)(a) and (5)(a)1-5 and/or the "Medical Expenses" provision of the Defendant's PIP insurance policies issued during the time period of January 1, 2008 through May 30, 2010?

(d)    When the Defendant pays for claims using the Fee Schedule Method in a manner that is contrary to the "Medical Expenses" provision of its PIP insurance policies issued during the time period of January 1, 2008 through May 30, 2010, is the MRI provider prohibited under Section 627.736(5)(a)5 from billing or attempting to collect from

the insured patient any amount in excess of the Defendant's payment?

71. The rights, status, or other equitable or legal relations of the parties are affected by Section 627.736(1)(a) and (5)(a)1-5, Florida Statutes (2007-2011) and other applicable law, and the express terms of the Defendant's PIP insurance policies. Accordingly, pursuant to Chapter 86, Florida Statutes, the Plaintiff and the class members may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

72. Section 86.011, Florida Statutes states that this Court has "jurisdiction ... to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether damages are available to the Plaintiff under Count II, this Court still has jurisdiction to determine the parties' respective rights, status, and other equitable or legal relations under the Florida PIP statute and/or the subject PIP insurance policy.

73. Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or nonexistence ... Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court still has jurisdiction to determine whether the Defendant's conduct has been unlawful, in order to prevent the same unlawful conduct in the future.

74. Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a ... contract, ... or whose rights, status, or other equitable or legal relations are affected by a statute ... may have determined any question of construction or validity arising under such statute, ... contract, ... or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has

jurisdiction to determine the rights of "any person" (such as the Plaintiff) who is in doubt about its rights under the PIP statute and/or the Defendant's insurance policy. Because the Plaintiff routinely provides health care services to the Defendant's PIP insureds, the issues raised in this declaratory relief claim affects the Plaintiff on an ongoing and continuing basis.

75.    Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether the Defendant has breached its PIP insurance policy by using the Fee Schedule Method, and/or whether this conduct will breach the PIP insurance policy in the future.

76.    Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has jurisdiction to determine the legality of the Defendant's past conduct, in order to gauge its anticipated future conduct and to prevent unlawful conduct in the future.

77.    Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury." Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

78.    The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida

Statutes.

**Count II – Individual (Non-Class Action) Breach**
**of Contract Claim For No-Fault Benefits Under**
**Pre-Endorsement PIP Insurance Policies**

79.    This is an individual (non-class action) breach of contract claim by the Plaintiff against the Defendant for unpaid no-fault benefits pursuant to Section 627.736(1)a and/or (5)(a)1, Florida Statutes (2007-2011), during the time period of January 1, 2008 through May 30, 2010.

80.    The Plaintiff realleges and incorporates by reference paragraphs 1-15, 25-34 and 38-42 above.

81.    As a result of the injuries sustained by Rhymes, the Plaintiff rendered reasonable, related and necessary diagnostic services to Rhymes on or about December 12, 2008, and the Plaintiff's charges were reasonable, usual and customary in the place where the services were provided.

82.    As a result of the injuries sustained by Clark, the Plaintiff rendered reasonable, related and necessary diagnostic services to Rhymes on or about May 10, 2010, and the Plaintiff's charges were reasonable, usual and customary in the place where the services were provided.

83.    The Plaintiff satisfied the pre-suit notice requirements of Section 627.736(10), Florida Statutes (2007-2011), for the following reasons:

(a)    With respect to the services provided to Rhymes, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated October 5, 2009, a copy of which is attached hereto as "**Exhibit K.**"

(b)    With respect to the services provided to Clark, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated September 21, 2010, a copy of which is attached hereto as "**Exhibit L.**"

84.    After receiving such pre-suit demand letters, the Defendant failed to fully and

timely pay the appropriate amount of PIP benefits required by Section 627.736(1)a and 627.736(5)(a)1, Florida Statutes (2007-2011) and/or the Defendant's PIP insurance policies in effect during the time period of January 1, 2008 through May 30, 2010.

85.   As a result, the Defendant violated Section 627.736, Florida Statutes (2007-2011) and/or breached the PIP insurance policies, by failing to make timely and full payment to the Plaintiff.

86.   The Defendant also failed to pay interest, which is due on the overdue payments pursuant to Section 627.736(4)(d), Florida Statutes (2007-2011).

87.   As a direct and proximate result of the foregoing acts and/or omissions by the Defendant, the Plaintiff suffered damages.

88.   The Plaintiff hereby demands that benefits equal to those amounts necessary to satisfy this claim be escrowed to cover the amount in dispute so that benefits are not exhausted while this lawsuit is pending.

89.   The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Sections 627.428 and/or 627.736(8), Florida Statutes.

### Count III -- Class Action for Declaratory Relief (by Post-Endorsement Class)

90.   This is a class action for declaratory relief pursuant to Chapter 86, Florida Statutes, brought by the Plaintiff and the Post-Endorsement Class against the Defendant. Alternatively, this count is brought by the Plaintiff and the Pre-Suit Notice Post-Endorsement Sub-Class against the Defendant.

91.   The Plaintiff realleges and incorporates by reference paragraphs 1-7, 16-32, 35-37, 43-48, and 52-62 above.

92.   In pertinent part, Section 627.736(10), Florida Statutes (2007-2011) states the

following:

DEMAND LETTER.—

(a) As a condition precedent to filing **any action for benefits under this section,** the insurer must be provided with written notice of an intent to initiate litigation. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(Emph. added).  Because Count III only seeks declaratory relief under Chapter 86, it is not an "action for benefits" pursuant to Section 627.736, and a pre-suit demand letter is not a condition precedent to the initiation of this action.

93.   Alternatively, the Plaintiff and the Pre-Suit Notice Post-Endorsement Sub-Class satisfied the pre-suit notice requirements of Section 627.736(10), Florida Statutes (2007-2011), for the following reasons:

(a)   With respect to the services provided to Paskert, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated September 7, 2011, a copy of which is attached hereto as **"Exhibit M."**

(b)   With respect to the services provided to Thatcher, the Plaintiff's counsel sent the Defendant a pre-suit demand letter dated September 29, 2011, a copy of which is attached hereto as **"Exhibit N."**

(c)   Pursuant to the definition set forth in paragraph 53 above, each member of the Pre-Suit Notice Post-Endorsement Sub-Class is required to have submitted a pre-suit demand letter to the Defendant pursuant to Section 627.736(10), Florida Statutes (2007-2011).

94.   The Plaintiff takes the position that under the vague, ambiguous and self-contradicting nature of the Amendatory Endorsement language, the Defendant is not authorized to pay PIP claims for MRI services using the Fee Schedule Method in Section 627.736(5)(a)f, and must instead use the Reasonable Amount Method required by Section 627.736(1)(a) and (5)(a)1.

The Defendant disagrees with this position.

95.    The Plaintiff takes the position that the Defendant is not lawfully authorized to process PIP claims for MRI services under the Fee Schedule Method, without clearly and unambiguously adopting that method in its PIP insurance policy, in lieu of the Reasonable Amount Method. The Defendant disagrees with this position.

96.    By failing to clearly and unambiguously adopt a single and exclusive payment calculation methodology in its PIP insurance policies issued since May 31, 2010, the Defendant places the Plaintiff, the Defendant's PIP insureds, and their MRI providers in doubt concerning the exact amount owed for MRI services rendered. The Defendant should not be permitted to refuse to calculate the amount of payment due under the Reasonable Amount Method, without clearly and unambiguously adopting the Fee Schedule Method in its insurance policy to the exclusion of any other payment calculation methodology.

97.    The Plaintiff is in doubt concerning its rights, and a bona fide present controversy exists between the Plaintiff, the class members, and the Defendant concerning the proper interpretation of Section 627.736, Florida Statutes (2007-2011) and other applicable law, and the express terms of the Amendatory Endorsement and/or the Defendant's PIP insurance policies issued since May 31, 2010, and the parties' respective rights and obligations thereunder, with respect to issues which include but are not limited to the following:

(a)    Is the Defendant required to pay PIP claims for MRI services in accordance with the Reasonable Amount Method required by Section 627.736(1)(a) and (5)(a)1, without clearly and unambiguously adopting another payment calculation method in its PIP insurance policy?

(b)    Is the Defendant lawfully authorized to process and pay PIP claims for MRI services under the Fee Schedule Method in Section 627.736(5)(a)f, without specifically

adopting that payment calculation method in its PIP insurance policy to the exclusion of any other payment calculation methods?

(c)     What are the parties' respective rights and obligations concerning Section 627.736(1)(a) and (5)(a)1-5 and/or the "Medical Expenses" provision of the Amendatory Endorsement issued since May 31, 2010?

(d)     When the Defendant pays for claims using the Fee Schedule Method under the "Medical Expenses" provision of its Amendatory Endorsement, is the MRI provider prohibited under Section 627.736(5)(a)5 from billing or attempting to collect from the insured patient any amount in excess of the Defendant's payment?

98.     The rights, status, or other equitable or legal relations of the parties are affected by Section 627.736(1)(a) and (5)(a)1-5, Florida Statutes (2007-2011) and other applicable law, and the express terms of the Defendant's PIP insurance policies. Accordingly, pursuant to Chapter 86, Florida Statutes, the Plaintiff and the class members may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

99.     Section 86.011, Florida Statutes states that this Court has "jurisdiction … to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether damages are available to the Plaintiff under Count V, this Court still has jurisdiction to determine the parties' respective rights, status, and other equitable or legal relations under the Florida PIP statute and/or the subject PIP insurance policy.

100.     Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or nonexistence … Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such

immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court still has jurisdiction to determine whether the Defendant's conduct has been unlawful, in order to prevent the same unlawful conduct in the future.

101.    Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a ... contract, ... or whose rights, status, or other equitable or legal relations are affected by a statute ... may have determined any question of construction or validity arising under such statute, ... contract, ... or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has jurisdiction to determine the rights of "any person" (such as the Plaintiff) who is in doubt about its rights under the PIP statute and/or the Defendant's insurance policy.   Because the Plaintiff routinely provides health care services to the Defendant's PIP insureds, the issues raised in this declaratory relief claim affects the Plaintiff on an ongoing and continuing basis.

102.    Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether the Defendant has breached its PIP insurance policy by using the Fee Schedule Method, and/or whether this conduct will breach the PIP insurance policy in the future.

103.    Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has jurisdiction to determine the legality of the Defendant's past conduct, in order to gauge its anticipated future conduct and to prevent unlawful conduct in the future.

104. Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury." Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

105. The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

### Count IV – Class Action for Injunctive Relief (Post-Endorsement Class)

106. This is a common law action for injunctive relief brought by the Plaintiff and the Class against the Defendant. Alternatively, this count is brought by the Plaintiff and the Pre-Suit Notice Sub-Class.

107. The Plaintiff realleges and incorporates by reference paragraphs 1-7, 16-32, 35-37, 43-48, and 52-62 above.

108. In pertinent part, Section 627.736(10), Florida Statutes (2007-2011) states the following:

DEMAND LETTER.—

(a) As a condition precedent to filing **any action for benefits under this section**, the insurer must be provided with written notice of an intent to initiate litigation. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(Emph. added). Because Count IV only seeks injunctive relief, it is not an "action for benefits" pursuant to Section 627.736, and a pre-suit demand letter is not a condition precedent to the initiation of this action.

109. Alternatively, the Plaintiff and the Pre-Suit Notice Post-Endorsement Sub-Class

satisfied the pre-suit notice requirements of Section 627.736(10), Florida Statutes (2007-2011), for the following reasons:

(a)     With respect to the services provided to Paskert, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated September 7, 2011, a copy of which is attached hereto as "**Exhibit M.**"

(b)     With respect to the services provided to Thatcher, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated September 29, 2011, a copy of which is attached hereto as "**Exhibit N.**"

(c)     Pursuant to the definition set forth in paragraph 53 above, each member of the Pre-Suit Notice Post-Endorsement Sub-Class is required to have submitted a pre-suit demand letter to the Defendant pursuant to Section 627.736(10), Florida Statutes (2007-2011).

110.    The Plaintiff and the class members will suffer irreparable injury if the Defendant is permitted in the future to continue relying upon an erroneous interpretation of Sections 627.736(1)a and (5)(a)1-5, Florida Statutes (2007-2011) as a basis to unlawfully reduce their payments for valid bills for MRI services provided to the Defendant's PIP insureds. Examples of such irreparable injury include but are not limited to the following:

(a)     Under Section 627.736(5)(a)5, Florida Statutes (2007-2012), "If an insurer limits payment as authorized by [Section 627.736(5)(a)2], the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits." Thus, by erroneously contending that a MRI provider's claim is governed by the lower permissive rates described in Section 627.736(5)(a)2, the Defendant places the MRI

providers in the untenable position of being unable to recover full payment from either the PIP insurance company or the insured patient. In other words, the MRI provider is left having to provide valuable medical services at a substantial discount, without any legal recourse.

(b)     Absent injunctive relief requiring the Defendant to cease and desist from such wrongful conduct in the future, the Plaintiff and the class members are left in the untenable position of having to address the Defendant's continuing and ongoing wrongs with a multiplicity of lawsuits, in the various different county courts across the State of Florida, with the risk of suffering inconsistent and varying results.

(c)     Under the version of the PIP statute in effect since January 1, 2008, a PIP insurer "may" limit reimbursement of MRI bills to 80% of the amount set forth in Section 627.736(5)(a)2f, Florida Statutes (2007-2011). If so, any lawfully provided MRI services that are not covered by Medicare or workers' compensation are not required to be reimbursed by the insurer, and therefore, must be paid by the insured patient himself regardless of his PIP insurance coverage. The Defendant should not be permitted to refuse payment for MRI services that would otherwise be payable under Section 627.736(1)(a) and (5)(a)1, Florida Statutes (2007-2011), without expressly explaining that in its PIP insurance policies.

(d)     The Defendant's continuing and ongoing unlawful conduct places its own PIP insureds at risk that MRI providers will refuse to treat them without receiving full payment in advance of receiving MRI services needed to properly treat and/or diagnose their health condition, and this will lead to incalculable or unascertainable losses to third parties.

111.    The Plaintiff and the class members have a clear legal right to seek an injunction

requiring that the Defendant cease and desist in the future from using and/or relying on an erroneous interpretation of Sections 627.736(1)(a) and (5)(a)1-5, Florida Statutes (2007-2011) as a basis to unlawfully reduce valid bills for medical services provided to the Defendant's PIP insureds.

112.    The Plaintiff and the class members have no other adequate remedy at law.

113.    The injunctive relief requested by the Plaintiff and the class members would not be contrary to the interest of the public generally.

114.    The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

### Count V – Individual (Non-Class Action) Breach of Contract Claim For No-Fault Benefits Under Amendatory Endorsement

115.    This is an individual (non-class action) breach of contract claim by the Plaintiff against the Defendant for unpaid no-fault benefits pursuant to Section 627.736(1)a and/or (5)(a)1, Florida Statutes (2007-2011).

116.    The Plaintiff realleges and incorporates by reference paragraphs 1-7, 16-32, 35-37, and 43-47 above.

117.    As a result of the injuries sustained by Paskert, the Plaintiff rendered diagnostic services reasonable, related and necessary diagnostic services to Rhymes on or about May 10, 2011, and the Plaintiff's charges were reasonable, usual and customary in the place where the services were provided.

118.    As a result of the injuries sustained by Thatcher, the Plaintiff rendered reasonable, related and necessary diagnostic services to Thatcher on or about June 10, 2011, and the Plaintiff's charges were reasonable, usual and customary in the place where the services were provided.

119.   The Plaintiff satisfied the pre-suit notice requirements of Section 627.736(10), Florida Statutes (2007-2011), for the following reasons:

(a)   With respect to the services provided to Paskert, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated September 7, 2011, a copy of which is attached hereto as "**Exhibit M.**"

(b)   With respect to the services provided to Thatcher, the Plaintiff's counsel sent Defendant a pre-suit demand letter dated September 29, 2011, a copy of which is attached hereto as "**Exhibit N.**"

120.   After receiving such pre-suit demand letters, the Defendant failed to fully and timely pay the appropriate amount of PIP benefits required by Section 627.736(1)a and 627.736(5)(a)1, Florida Statutes (2007-2011) and/or the Defendant's PIP insurance policies.

121.   As a result, the Defendant violated Section 627.736, Florida Statutes (2007-2011) and/or breached the PIP insurance policies, by failing to make timely and full payment to the Plaintiff.

122.   The Defendant also failed to pay interest, which is due on the overdue payments pursuant to Section 627.736(4)(d), Florida Statutes (2007-2011).

123.   As a direct and proximate result of the foregoing acts and/or omissions by the Defendant, the Plaintiff suffered damages.

124.   The Plaintiff hereby demands that benefits equal to those amounts necessary to satisfy this claim be escrowed to cover the amount in dispute so that benefits are not exhausted while this lawsuit is pending.

125.   The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Sections 627.428 and/or 627.736(8), Florida Statutes.

### PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully requests this Honorable Court to award the following relief against the Defendant:

      a.      Counts I, III, and/or IV are properly maintainable as a class action under Rule 1.220(b)(2) and appointing the Plaintiff to represent the classes and/or sub-classes defined herein, and appointing the undersigned law firms as class counsel;

      b.      Issue an order granting a declaratory judgment under Counts I and/or III declaring the parties' respective rights and obligations under Section 627.736(1)(a) and (5)(a)1-5, Florida Statutes (2007-2011), the Defendant's PIP insurance policies, the Amendatory Endorsement, and any other applicable law;

      c.      Issue an order granting a temporary and/or permanent injunction under Count IV requiring the Defendant to cease and desist in the future from continuing to utilize and rely upon an erroneous interpretation of Section 627.736(1)(a) and/or (5)(a)1-5 and/or the Amendatory Endorsement;

      d.      Issue a judgment for damages against the Defendant and in favor of the Plaintiff individually under Counts II and/or V, requiring full payment for medical services and treatments in the amount required by Section 627.736(1)(a) and/or (5)(a)1-5, Florida Statutes (2007-2011), together with prejudgment interest thereon, and all interest on any past benefits not timely paid;

      e.      Issue an order requiring the Defendant to pay the Plaintiff's reasonable attorneys' fees and costs pursuant to Sections 627.428 and/or 627.736(8); and;

      f.      Grant such other relief as this Honorable Court deems appropriate.

## Demand for Jury Trial

The Plaintiff on behalf of itself and all others similarly situated who may join this action, hereby demands a trial by jury on all the issues so triable.

DATED this _10th_ day of ___September___, 20 _12_.

Respectfully Submitted,

THE DIVALE LAW GROUP, P.A.
Lorea J. Divale, FBN 0173622
Email: lorcadlg@gmail.com
P.O. Box 22347
St. Petersburg, FL 33742
Telephone: (727) 321-5646
          and
THE JEEVES LAW GROUP, P.A.
Scott R. Jeeves, FBN 0905630
Primary Email: sjeeves@jeeveslawgroup.com
Secondary Email: amyers@jeeveslawgroup.com
954 First Avenue North
St. Petersburg, FL 33705
Telephone: (727) 894-2929
          and
CRAIG E. ROTHBURD, P.A.
Craig E. Rothburd, FBN 49182
Email: crothburd@e-rlaw.com
800 W. De Leon Street
Tampa, FL 33606-2722
Telephone: (813) 251-8800
          and
de la PARTE & GILBERT, P.A.
David M. Caldevilla, FBN 654248
Primary Email: dcaldevilla@dgfirm.com
Secondary Email: serviceclerk@dgfirm.com
Michael R. Bray, FBN 58263
Primary Email: mbray@dgfirm.com
Secondary Email: serviceclerk@dgfirm.com
Post Office Box 2350
Tampa, FL 33601-2350
Telephone: (813) 229-2775

**ATTORNEYS FOR PLAINTIFF**